UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TROY LYNN ROBERTS,

     Plaintiff,

v.                                        Case No. 3:16cv68-MCR-CJK

ERIK SORMRUDE,

     Defendant.

_____/

## ORDER and
## REPORT AND RECOMMENDATION

Before the court is plaintiff's motion for summary judgment (doc. 51) and defendant's amended motion for summary judgment (doc. 53). The matter is referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After reviewing the record, the parties' submissions, and the relevant law, the undersigned recommends that defendant's amended motion for summary judgment be granted, and plaintiff's motion for summary judgment be denied.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, proceeding *pro se* and *in forma pauperis*, is an inmate of the Florida Department of Corrections ("FDOC") currently confined at Bay Correctional Facility. He initiated this action by filing a civil rights complaint pursuant to 42

U.S.C. § 1983.  (Doc. 1).  The complaint names Erik Sormrude, a former investigator with the Walton County Sheriff's Office ("WCSO"), as the sole defendant.

Plaintiff alleges defendant violated the Fourth Amendment by searching plaintiff's residence on November 19, 2014.  Plaintiff says defendant either: (1) conducted a warrantless search; or (2) had a warrant, but it was not supported by probable cause and defendant added information to the warrant affidavit after the search.[1]  Plaintiff also claims defendant violated the Fourth Amendment and Federal Rule of Criminal Procedure 41 by failing to show plaintiff the warrant at the outset of the search.

Following resolution of defendant's motion to dismiss, plaintiff's only possible relief is nominal damages.  (Docs. 25, 30).  Both plaintiff and defendant have moved for summary judgment.  (Docs. 51, 53).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of

---

[1] For example, during his deposition, plaintiff stated, "[s]o either [defendant] added the Mountain Dew bottle after the warrant was signed, or he just didn't have a warrant[.]"  (Doc. 53-2, p. 64).

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 594 (11th Cir. 1995). Generally, a court must view the facts in the light most favorable to the non-moving party (here, plaintiff) and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1303 (11th Cir. 2009). The court may not, however, accept any facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting

the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

## FACTS

The facts pertinent to the resolution of the motions for summary judgment are drawn from plaintiff's verified complaint and the evidence in the summary judgment record. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment). Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the [nonmovant]." *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Nevertheless, matters stated below as "facts" for purposes of summary judgment review may not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

On the afternoon of November 19, 2014, plaintiff's neighbors, Alex Elliot and Michele Hyzy, had a physical altercation and Hyzy sought refuge in plaintiff's residence. (Doc. 51-1, p. 4; Doc. 55-1, p. 2). Plaintiff asked his brother, Steven Strobel, to give Hyzy a ride to the WCSO to report domestic violence; plaintiff gave Strobel money for gas, cigarettes, and a 20-ounce bottle of soda. (Doc. 51-1, p. 3-4, 6, 13; Doc. 53-2, p. 25-28, 46-47). When Hyzy arrived at the sheriff's office, she

reported the incident with Elliot; Hyzy also told Investigator Skipper and defendant

Sormrude that she observed drug activity in plaintiff's residence. (Doc. 51-1, p. 6-

9, 30-32). Hyzy completed a sworn statement describing what she purportedly saw

at plaintiff's residence:

> I went over to Troy's house after Alex hit me [and] left. Troy showed
> me his arm and asked what I thought it was. He had [a] chemical burn
> of some [sort]. I asked him he said it was from shooting ice. Told . . .
> it wasn't real. Then he pull[ed] out a clear glass dish from [a] white
> cab that had brown meth in it [and] he pull[ed] out a small round glass
> dish with a bag and little clear rocks that he called ice. Then put it all
> back in the cabinets above sink. He ask about a 20 oz bottle that he
> needed one but didn't say.

(Doc. 51-1, p. 41).

After taking Hyzy's statement, defendant says he sought a warrant to search

plaintiff's residence for controlled substances and related items. (Doc. 51-1, p. 94-

95, 98-101, 109-17). The affidavit in support of the warrant indicated: (1) on March

11, 2014, WCSO Investigators Townsend and Shelton learned from Tina Brand that

plaintiff was manufacturing methamphetamine in the Sandestin area of Walton

County, Florida; (2) on November 18, 2014, Investigator Skipper and Florida

Department of Law Enforcement Special Agent Hatton learned from a reliable

source that plaintiff was currently manufacturing and possessing methamphetamine

at his residence, 103 Santa Rosa Street, Santa Rosa Beach, Florida; and (3) a search

of NPLEx[2] showed plaintiff had attempted to purchase pseudoephedrine nine times within the 60 days preceding November 19, 2014, with three "blocks" due to exceeding the nine-gram limit within 30 days, and six successful purchases, totaling 15.6 grams. (Doc. 51-1, p. 110). Defendant also summarized Hyzy's sworn statement and attached it to the affidavit. (Doc. 51-1, p. 110, 117). Although Hyzy's statement did not specify what type of 20-ounce bottle plaintiff requested, defendant's description of the statement suggested plaintiff "asked [Hyzy] to provide him with an empty 20 ounce Mountain Dew bottle, stating that he would need it later." (Doc. 51-1, p. 110). Defendant represented in the affidavit that he "[knew] through his training and experience that 20 ounce Mountain Dew bottles are commonly used in the one pot method of manufacturing of methamphetamine." (Doc. 51-1, p. 110). Based on defendant's affidavit, Judge Howard LaPorte issued a search warrant for plaintiff's residence. (Doc. 51-1, p. 82-85).

Around 9:00 p.m. on November 19, 2014, defendant, along with additional WCSO members, conducted a search of plaintiff's residence in Santa Rosa Beach, Florida. (Doc. 1; Doc. 53-2, p. 36-45). After plaintiff was brought outside the residence, defendant Mirandized plaintiff and informed him the officers had a warrant to search the residence. (Doc. 1; 53-2, p. 44). Plaintiff asked to see the

---

[2] NPLEx stands for National Precursor Log Exchange and is a real-time electronic logging system that tracks the sales of over-the-counter cold and allergy medications containing pseudoephedrine, precursors to the illegal drug methamphetamine. (Doc. 53, p. 4).

warrant, but it was never shown to him.  (Doc. 53-2, p. 35-36, 44-45).  During the search, officers discovered a Mountain Dew bottle inside the microwave.  (Doc. 53-2, p. 46).  The search also uncovered evidence that led the state of Florida to charge plaintiff with: (1) trafficking in amphetamine; (2) selling, manufacturing, and/or delivering methamphetamine; and (3) possession of drug paraphernalia.  (Doc. 53-2, p. 7; Doc. 53-9; Doc. 53-14, p. 1).

During the criminal proceeding, plaintiff moved to suppress the seized evidence, arguing the search warrant was not executed in good faith and not supported by probable cause because the affidavit: (1) "made use of stale information" (Brand's statement); (2) made use of "information from an[] informant with no corroboration or mention of veracity and reliability" (the "reliable source's" statement); and (3) incorrectly stated plaintiff asked Hyzy for the specific brand "Mountain Dew."  (Doc. 53-12).  Plaintiff also claimed he was not given a copy of the warrant during the search.  (*Id.*).

At the August 11, 2015, hearing on the motion to suppress, however, plaintiff chose to accept a plea offer.  (Docs. 53-13 – 53-15).  As part of the plea, plaintiff withdrew the motion to suppress and stipulated to the factual basis as laid out in the arrest report.  (*Id.*).  He pleaded nolo contendere to: (1) trafficking in methamphetamine (28 to 200 grams); (2) selling, manufacturing, and/or delivering

methamphetamine; and (3) possession of drug paraphernalia. (*Id.*). As a result, he received a 7-year prison sentence.[3] (*Id.*).

## DISCUSSION

Plaintiff alleges defendant violated the Fourth Amendment, which states "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." As previously indicated, plaintiff asserts defendant either: (1) conducted a warrantless search of plaintiff's residence; or (2) had a warrant, but it was not supported by probable cause and defendant added information to the warrant after the search. Plaintiff, however, cannot maintain a Fourth Amendment claim under either theory of liability.

### *Heck v. Humphrey*

Plaintiff's Fourth Amendment claim is barred by the *Heck* doctrine because his allegations are inconsistent with the factual basis for plaintiff's plea. In *Heck v. Humphrey*, the Supreme Court stated:

_____

[3] Plaintiff's nolo contendere plea qualifies as a conviction under Florida law. *See* Fla. Stat. § 960.291(3) ("'Conviction' means a guilty verdict by a jury or judge, or a guilty or nolo contendere plea by a defendant, regardless of adjudication of guilt.").

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. 477, 487 (1994) (footnotes omitted, emphasis in original).

"Because an illegal search or arrest may be followed by a valid conviction, a successful § 1983 action for Fourth Amendment search and seizure violations does not necessarily imply the invalidity of a conviction." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (citations and footnotes omitted); *see also Heck*, 512 U.S. at 487 n.7 ("For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful.") (citations omitted, emphasis in original). Not all Fourth Amendment claims fit this exception; "the court must look both to the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted." *Hughes*, 350 F.3d at 1160 n.2.

Here, the plea agreement plaintiff signed states: (1) plaintiff understands "the sentencing court is incorporating by reference this complete plea agreement as part of the sentencing order imposed by the court"; and (2) "[t]he arrest report or offense report or probable cause affidavit which is a part of the court record filed with the clerk of court is hereby incorporated by reference and agreed to by the Defendant as a factual basis for the plea."  (Doc. 53-14, p. 2, 6).

The statement of probable cause set out in the arrest report indicates, "[o]n November 19, 2014, the Walton County Sheriff's Office VICE/Narcotics Unit executed a probable cause search warrant at 103 Santa Rosa Street, Santa Rosa Beach, Florida, residence of Troy Roberts." (Doc. 53-9, p. 1).  Likewise, the offense report states: (1) Judge LaPorte granted the search warrant and WCSO later executed it; and (2) defendant "read [plaintiff] the probable cause search warrant that was granted for his residence."  (Doc. 53-7, p. 8).

Thus, in the factual basis for the plea, plaintiff agreed defendant had a warrant to search the Santa Rosa Beach residence that was supported by probable cause. Because alleging defendant searched his residence without a warrant or probable cause is inconsistent with the factual basis for plaintiff's plea (as reflected in the offense and arrest reports), plaintiff cannot proceed with his Fourth Amendment claim.  *See Viramontes v. City of Chicago*, 840 F.3d 423, 427 (7th Cir. 2016) ("A subsequent excessive-force claim may, however, imply the invalidity of a conviction

if the plaintiff attempts to testify in a way that contradicts the conviction's factual basis."); *cf. VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) (concluding claim was not *Heck*-barred because the plaintiff did "not collaterally attack his conviction, deny that he resisted [the defendant's] order to comply with the blood draw, *or challenge the factual basis presented at his change of plea hearing*") (emphasis added); *Lucier v. City of Ecorse*, 601 F. App'x 372, 377 (6th Cir. 2015) (concluding claim was not *Heck*-barred in part because "[t]he factual basis of Plaintiff's guilty plea was never specified"); *see also Heck*, 512 U.S. at 484 (noting the "strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction") (citation omitted).

The undersigned recognizes I previously addressed defendant's *Heck* argument in a motion to dismiss and found that, "[a]t least at this stage of the litigation, plaintiff's Fourth Amendment claim should be allowed to proceed." (Doc. 25). At the time, the court did not have access to the plea agreement signed by plaintiff, or to discovery. (Doc. 53-14). During discovery it became clear plaintiff's claim is based entirely on the allegedly illegal warrant and entry into his residence, resulting in discovery of incriminating evidence and, ultimately, to his arrest and criminal convictions.[4] During his deposition, plaintiff made clear that the relief he

---

[4] Plaintiff does not, for example, suggest defendant maliciously destroyed property during the search, or caused any loss beyond seizure of the incriminating evidence.

seeks would invalidate his conviction and incarceration. *See* (Doc. 53-2, p. 72) ("[I]f [the complaint] was true and correct, then my incarceration would be invalid.").

Because the drugs and paraphernalia that led to plaintiff's convictions were discovered pursuant to the allegedly illegal search, plaintiff's claim is *Heck*-barred.[5] *See Weaver v. Geiger*, 294 F. App'x 529, 531-33 (11th Cir. 2008) (finding Fourth Amendment claim *Heck*-barred because Weaver's "conviction for possession with intent to distribute was premised on the methadone uncovered during the search permitted by the allegedly improper warrant" and "if Weaver was successful in his claim, it would cast doubt on the validity of an essential element of the offense for which he was found guilty"); *Baxter v. Crawford*, 233 F. App'x 912, 916 (11th Cir. 2007) (finding Fourth Amendment claim *Heck*-barred where cocaine found in plaintiff's residence would not have been discovered without the execution of a

---

[5] Plaintiff argues his claim is not *Heck*-barred based on the Supreme Court's decision in *Haring v. Prosise*, 462 U.S. 306 (1983). In *Haring*, the Supreme Court considered "whether Prosise's § 1983 action to redress an alleged Fourth Amendment violation is barred by the judgment of conviction entered in state court following his guilty plea." *Id.* at 312 (footnotes omitted). Applying the full faith and credit statute, 28 U.S.C. § 1738, and Virginia law concerning collateral estoppel, the Court concluded Prosise's "conviction in state court does not preclude him from now seeking to recover damages under 42 U.S.C. § 1983 for an alleged Fourth Amendment violation that was never considered in the state proceedings." *Id.* at 314-23. The Court stated: "[W]hen a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized." *Id.* at 321. *Haring*, however, predates *Heck*. *Heck* announced a new limitation on a convict's ability to bring § 1983 action for money damages that is not based on application of state law. *See Heck*, 512 U.S. at 480 n.2 ("We also decline to pursue, without implying the nonexistence of, another issue, suggested by the Court of Appeals' statement that, if petitioner's conviction were proper, this suit would in all likelihood be barred by res judicata. The res judicata effect of state-court decisions in § 1983 actions is a matter of state law.") (citations and quotations omitted).

search warrant plaintiff claimed contained stale and false information).    Thus,

defendant is entitled to summary judgment on plaintiff's Fourth Amendment search

claim.

Federal Rule of Criminal Procedure 41

Plaintiff also argues defendant's failure to produce the warrant at the outset of

the search violated the Fourth Amendment and Federal Rule of Criminal Procedure

41.  The pertinent part of Rule 41 states:

> The officer executing the warrant must give a copy of the warrant and
> a receipt for the property taken to the person from whom, or from whose
> premises, the property was taken or leave a copy of the warrant and
> receipt at the place where the officer took the property.

Fed. R. Crim. P. 41(f)(1)(C).

Plaintiff's argument fails for two reasons.  First, because defendant was not a

federal law enforcement officer, his actions are not governed by Rule 41.  *See United*

*States v. Pulliam*, 748 F.3d 967, 974 (10th Cir. 2014) ("Rule 41 applies only when

federal officers are directly involved in carrying out the search itself and in taking

immediate custody of the fruits of the search, or if from the beginning it was assumed

a federal prosecution would result.") (quotations and citations omitted).

Second, "neither the Fourth Amendment nor Federal Rule of Criminal

Procedure 41" requires "the executing officer [to] present the property owner with a

copy of the warrant before conducting his search."    *United States v. Grubbs*, 547

U.S. 90, 98-99 (2006); *see also United States v. Tracey*, 597 F.3d 140, 146 n.5 (3d

Cir. 2010) ("Of course, the Fourth Amendment does not require the officer to provide a copy of the warrant to the subject before he conducts the search."); *United States v. Cazares-Olivas*, 515 F.3d 726, 730 (7th Cir. 2008) ("[W]hatever the most prudent course may be, the fourth amendment does not require officers to have a warrant in hand when searching."); *United States v. Stefonek*, 179 F.3d 1030, 1034 (7th Cir. 1999) ("The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is . . . evidence that the requirement of particular description does not protect an interest in monitoring searches.") (internal citations omitted).  Despite the popularity among jailhouse lawyers of this type of form over substance argument, failure to show plaintiff a copy of the search warrant does not implicate, much less violate, either the Fourth Amendment or Federal Rule of Criminal Procedure 41.

"Motion for Subpoena to Produce Documents and Tangible Things or to Permit an Inspection"

Plaintiff currently has a "Motion for Subpoena to Produce Documents and Tangible Things or to Permit an Inspection" (doc. 72) pending before the court.  The motion asks the court to issue a subpoena to Michael Adkinson, the Sheriff of Walton County, for: (1) video footage of plaintiff from the WCSO substation and the Walton County Jail; (2) "the log of the date and time of issuance when the warrant was signed"; and (3) photos taken during the search.  Plaintiff previously explained he believes the video and photos would show defendant did not read or give plaintiff a

copy of the warrant at the outset of the search, and no warrant existed at the time of the search.  (Docs. 46, 49).  As explained above, however, plaintiff cannot state a Fourth Amendment claim based on allegations defendant failed to show, or did not have, a warrant.  The materials sought through the subpoena, therefore, would not affect the resolution of the motions for summary judgment and plaintiff's motion for subpoena will be denied.

Accordingly, it is ORDERED:

1.    Defendant's motion to strike plaintiff's motion for summary judgment as untimely (doc. 52) is DENIED.

2.    Plaintiff's motion to supplement plaintiff's summary judgment motion (doc. 55) is GRANTED.  Taylor Gates' declaration was considered when addressing the motions for summary judgment.

3.    Defendant's motion to strike plaintiff's motion to supplement plaintiff's summary judgment motion (doc. 56) is DENIED.  Taylor Gates made her declaration under penalty of perjury which, pursuant to 28 U.S.C. § 1746, is the equivalent of an affidavit.

4.    Plaintiff's "Motion for Subpoena to Produce Documents and Tangible Things or to Permit an Inspection" (doc. 72) is DENIED.

And it is respectfully RECOMMENDED:

1.    That plaintiff's motion for summary judgment (doc. 51) be DENIED.

2.     That defendant's amended motion for summary judgment (doc. 53) be

GRANTED.

3.     That the clerk be directed to enter judgment in favor of defendant and

against plaintiff.

4.     That the clerk be directed to close the file.

At Pensacola, Florida, this 28th day of August, 2018.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.